IN THE UNITED STATES DISTRICT COURT

                          FOR THE DISTRICT OF OREGON

ERVIN LARRY SMITH,                )
                                  )    Civil No. 05-1364-PK
         Petitioner,              )
                                  )
    v.                            )
                                  )
OREGON BOARD OF PAROLE AND        )
POST-PRISON SUPERVISION,          )    FINDINGS AND RECOMMENDATION
                                  )
         Respondent.              )

     Anthony D. Bornstein
     Office of the Federal Public Defender
     101 SW Main Street, Suite 1700
     Portland, Oregon  97204

         Attorney for Petitioner

     Hardy Myers
     Attorney General
     Denis M. Vannier
     Assistant Attorney General
     Department of Justice
     1162 Court Street NE
     Salem, Oregon 97301

         Attorneys for Respondent


      1 - FINDINGS AND RECOMMENDATION

PAPAK, Magistrate Judge.

Petitioner, an inmate at the Oregon State Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. Petitioner alleges that the decision of the Oregon Board of Parole and Post-Prison Supervision ("Board") denying him re-release on parole violated his rights to be free from *ex post facto* punishment and to due process. For the reasons that follow, the Petition for Writ of Habeas Corpus (#1) should be denied, and Judgment should enter dismissing this action with prejudice.

## BACKGROUND

Petitioner committed a number of crimes between October 21, 1982 and December 7, 1984 for which he was convicted and sentenced to prison. These crimes included robbery, assault, tampering with a witness, and driving while suspended. Respondent's Exhibits 101 and 103, pp. 65 & 197. The Board first released petitioner on parole in September 1998. Respondent's Exhibit 103, p. 126. Thereafter, following a series of parole violations "mostly centering around drug use and refusing to go to drug treatment programs," the Board revoked petitioner's parole in February 2000. Respondent's Exhibit 103, p. 126.

The Board re-released petitioner on parole in February 2003. Respondent's Exhibit 103, p. 149. As a condition of his parole, petitioner was subject to immediate arrest and return to the Board for a future disposition hearing if he engaged in any drug use.

Id.  Approximately one month later, petitioner met with a parole officer who noticed track marks and bruising on petitioner's arm. Petitioner admitted to methamphetamine use and a lab test confirmed its presence in his system.  Id at 86 & 149.

The Board revoked petitioner's parole on April 4, 2003 and scheduled a future disposition hearing for July 15, 2003.  Id at 154 & 157.  At the hearing, the Board denied re-release citing aggravating factors and finding that petitioner could not be adequately controlled in the community.  Id at 188 & 192.  The Board set a new parole release date of March 9, 2008.  Id at 188.

Petitioner sought administrative review of the Board's decision as set forth in Board Action Form #22 ("BAF #22").  Id at 194-196.  He argued that, pursuant to Himes v. Thompson, 336 F.3d 848 (9th Cir. 2003), the Board's reliance on the aggravating factors listed in BAF #22 to deny him re-release violated the Oregon and federal constitutional bans on *ex post facto* laws. Id at 196.  The Board denied petitioner relief noting that: (1) the Himes decision was inapplicable to petitioner's case; (2) the Board's findings were supported by the record; and (3) any single aggravating factor would have been sufficient to deny re-release on parole.  Respondent's Exhibit 103, p. 197.  On appeal, the Oregon Court of Appeals denied petitioner's motion for leave to proceed with judicial review on the merits, and the Oregon Supreme

3 - FINDINGS AND RECOMMENDATION

Court denied review.  <u>Smith v. Board of Parole</u>, 2005 Or. LEXIS 421; Respondent's Exhibits  107-110.

On August 31, 2005, petitioner filed this action.  In his Petition for Writ of Habeas Corpus, petitioner alleges two grounds for relief:

> 1. Petitioner appealed BAF #22 to the Board citing *Himes v. Thompson*, 336 F.3d 848 (9th Cir. 2003) in support of the position that the Board was retroactively applying administrative rules to impose a 60 month revocation sanction on him for violating his parole. Under OAR 255-075-090(1)(a)(Temporary rules effective 11/19/84 to 5/17/85), the Board could only revoke his parole for an additional term of <u>four to eight months</u>.
>
> The only way that the Board could have deviated from this requirement was if it found aggravation or mitigations under Exhibit E or Exhibit G.  OAR 255-75-095(1)(Temporary rules effective 11/19/84 to 5/17/85). Variations were allowed based on those established in OAR Chapter 255, Division 35, Exhibit D.
>
> At the time petitioner committed his crime Exhibit D permitted a standard variation from the ranges with only two voting members of the Board (a panel).  For petitioner, that meant with his crime category rating of six (6) and his criminal history score of five (5), the maximum variation the Board could apply was a ten-month standard variation.
>
> Because the Board did not deny re-release it had to follow OAR 255-75-090 and establish a release of no more than four to eight months, with no greater variation than ten months for findings of aggravation. Nothing in those rules allows the Board to use aggravation factors to enhance a revocation sanction beyond what the rule requires.  Applying any other rules to petitioner violates the ex post facto provisions of the state and federal constitution as discussed in *Himes*.
>
> 2. In a case involving a parole revocation hearing before the Board of Parole the "substantial evidence" standard applies.  Where an agency proceeding touches upon a person's liberty interests or other constitutional

4 - FINDINGS AND RECOMMENDATION

> rights, a clear and convincing standard of proof is required.
>
> The Board lacked substantial evidence to support the finding that petitioner violated his parole on the grounds that he 1) was engaged in assaultive behavior; 2) was involved in same type of criminal activity. Nothing in the hearing officer's report or any of his parole reports shows that he was assaultive or was involved in same type of criminal activity. Therefore, by relying on these findings as a basis to deny petitioner re-release back into the community, the Board violated the Fourteenth Amendment of the United States Constitution.

Respondent asks the court to deny relief on the Petition because petitioner's claims were properly denied on the merits in a state-court decision that is entitled to deference.

## DISCUSSION

### I. Standard of Review

An application for writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that

contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case." Id at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. Id at 410. The state court's application of clearly established law must be objectively unreasonable. Id at 409.

## II. *Ex Post Facto* Claim

In his first ground for relief, petitioner alleges that the Board violated the *Ex Post Facto* Clause of the United States Constitution when it imposed a 60-month revocation sanction on him for violating his parole. Petitioner argues that the Board retroactively applied a more detrimental parole regulation because he contends that the Oregon Administrative Rules in effect at the time he committed his crimes limited the time the Board could have revoked his parole to 18 months.

The Constitution provides that "No State shall . . . pass any . . . ex post facto law." U.S. Const. art. I, § 10. The *Ex Post*

6 - FINDINGS AND RECOMMENDATION

*Facto* Clause "is aimed at laws that retroactively alter the definition of crimes or increase punishment for criminal acts." Souch v. Schaivo, 289 F.3d 616, 620 (quoting Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 504 (1995)).  Oregon Board of Parole regulations are properly subject to *ex post facto* analysis.  Himes, 336 F.3d at 854.  To violate the *Ex Post Facto* Clause, a regulation must have been applied retroactively and created a "sufficient risk" of increasing the punishment attached to a petitioner's crimes.  Id (citing Morales, 514 U.S. at 509).[1]

Where, as here, the state court supplies no reasoned decision, the court conducts an independent review of the record to determine whether the state court decision was objectively unreasonable.  See Delgado v. v. Lewis, 223 F.3d 976, 981 (9th Cir. 2000).  In this case, such independent review requires an examination of Oregon parole regulations.  However, the court defers to Oregon courts regarding predicate questions related to the interpretation of such parole regulations.  Himes, 336 F.3d at 853 (citing Lindsey v. Washington, 301 U.S. 397, 400 (1937)).

Petitioner contends that "[b]ecause the Board did not deny re-release it had to follow OAR 255-75-090 and establish a release

---

[1] Significantly, the respondent in Himes did not dispute that the Board retroactively applied 1994 parole regulations in addressing parole violations relating to crimes petitioner committed in 1978.  The respondent here makes no such concession. To the contrary, BAF #22 states that the Board's decision was made "PURSUANT TO THE LAWS AND RULES IN EFFECT AT THE TIME OF THE COMMITMENT OFFENSE(S)."  Respondent's Exhibit 103, p. 192.

7 - FINDINGS AND RECOMMENDATION

date of no more than four to eight months, with no greater variation than ten months for findings of aggravation." Petition for Writ of Habeas Corpus (#2), p. 3.[2] As a preliminary matter, petitioner is mistaken that the Board "did not deny re-release." In fact, petitioner's Memorandum of Law in Support of Petition for Writ of Habeas Corpus begins with the assertion that "Larry Ervin Smith challenges the decision of the Oregon Board of Parole, in 2003, <u>denying his re-release on parole</u> and setting his new parole release date of March 9, 2008." (emphasis added). At his future disposition hearing held July 15, 2003, Board member Diane Rea stated:

> Okay. Mr. Smith, the Board has deliberated and reached a unanimous decision. The Board, considering all of the information before it, has determined that it will **deny your rerelease** on parole, and set a new release date of March 9, 2008. That's five years from your arrest date.

Respondent's Exhibit 103, p. 188 (emphasis added). In addition, BAF #22 (the decision petitioner challenges here) states that "[t]he Board denies re-release finding the inmate can not be adequately controlled in the community." <u>Id</u> at 192.

The Board's decision to deny re-release is significant to the court's analysis because in <u>Gonzalez</u>, the Oregon Court of Appeals, in its examination of parole regulations comparable to those at issue here, drew a distinction between reinstating or continuing a

---

[2] The Oregon Administrative Rules relied on by petitioner are comparable to those the Oregon Court of Appeals examined in <u>Gonzalez v. Washington</u>, 182 Or. App. 112 (2002).

8 - FINDINGS AND RECOMMENDATION

parole violator's parole (with the same or modified conditions of parole) and revoking parole and requiring the parole violator to serve up to the balance of his sentence. Gonzalez, 182 Or. App. at 541. That court held that while OAR 255-75-090 through OAR 255-75-096 govern the former action, they do not apply to the latter. Id at 540-41. Consequently, since the Board here revoked petitioner's parole and denied him re-release, its action was not constrained by either the presumptive terms of four to eight months, or the requirement that it find aggravation in order to increase petitioner's term of incarceration. Having revoked petitioner's parole, the Board could have required petitioner to serve out the remainder of his sentence (due to expire in 2035) less any good-time earned. Id.; Respondent's Exhibit 103, p. 161.

Accordingly, upon independent review of the record, it is clear that the state court decision denying petitioner relief on his *ex post facto* claim was not unreasonable under clearly established federal law. Moreover, as respondent points out, petitioner does not argue that the Oregon Court of Appeals' decision was objectively unreasonable under United States Supreme Court precedent.

### III. **Due Process Claim**

In his second claim, petitioner contends that the Board violated his constitutional due process rights because it lacked "substantial evidence" to support its findings that petitioner

9 - FINDINGS AND RECOMMENDATION

violated his parole for engaging in assaultive behavior and becoming involved in the same type of criminal activity. Petitioner argues that "if the Board had no basis for concern about any violent activity, it is quite likely that [it] would have imposed a lesser sanction instead of the more extreme penalty of outright revocation." Petitioner's Memorandum in Support of Petition (#39), p. 6.[3]

The court is unpersuaded by petitioner's argument for a number of reasons. First, the aggravating factor petitioner references which mentions assaultiveness and involvement in the same type of criminal activity reads in full:

> REPETITION OF TYPE OF CONDUCT ASSOCIATED WITH COMMITMENT OFFENSE OR PAST CONDITIONS (RETURN TO DRUG ABUSE, ASSAULTIVENESS, INVOLVEMENT IN SAME TYPE OF CRIMINAL ACTIVITY)

Respondent's Exhibit 103, p. 192. As the court reads this aggravating factor, it finds it likely that the actions set forth in parentheses are merely examples of the type of behavior that qualify as "repetition of the type of conduct associated with commitment offense or past conditions," and not independent aggravating factors specifically identified and relied upon by the

---

[3] In support of his contention that the Board was unduly concerned with his having engaged in violent behavior, petitioner cites to the Board's Order of Revocation dated April 4, 2003. However, that same revocation order makes clear that the Board's decision to revoke was based on a single violation of petitioner's conditions of supervision: that he "[n]ot use or possess controlled substances except pursuant to a medical prescription." Respondent's Exhibit 103, p. 152.

10 - FINDINGS AND RECOMMENDATION

Board. Particularly in the context of this record, the court is unconvinced that the Board made findings of aggravation based specifically on assaultiveness and involvement in the same type of criminal activity.

In addition, petitioner does not challenge the Board's findings of aggravation based on the fact that petitioner had returned to drug use, had a prior parole revocation, and had been on parole less than three months before his latest violation. Respondent's Response to Petition for Writ of Habeas Corpus (#34), p. 7.

Finally, petitioner contends that the Board's decision to revoke his parole was based on unsubstantiated findings that he engaged in assaultive behavior and was involved in the same type of criminal activity. This conclusion is belied by the record. As the following excerpts from petitioner's July 2003 future disposition hearing reveal, the Board was focused solely on petitioner's relapse into drug use:

> You'd come to prison for really serious crimes. You have a really long sentence. Your sentence doesn't expire until 2035. That's over 30 years from now. You spend a pretty long period in prison. We put you on parole. You violate. We leave you on parole. You violate and we bring you back for less than your maximum. We put you back out and we say "If you use drugs, you're going to come back to prison." So what is going on in your mind with respect to that, or anything else in your life, when you sit down to make that phone call? Because you know when you call her, you're going to end up using.

\* \* \*

11 - FINDINGS AND RECOMMENDATION

> I want to know what your decision-making process is, what your priorities are, and here's why. Here's why. Here's what we're charged with, in case you don't understand all of this. If someone who has been convicted of very, very serious crimes -- the severe beating of an elderly man, who otherwise was in the sanctity of his own home -- by someone cranked up on cocaine, who wants money and property, I presume, to get more drugs or do something else illegal.
>
> * * *
>
> Mr. Smith, I'm done talking. I want to tell you what our situation is, and then I'm going to give you a chance to respond to it, because this is the dilemma we have in front of us. And you got a lengthy prison sentence. And we said, you don't have to do all that time in prison. You can go out in the community and do some of your -- the rest of your time in the community. We just don't want you to use drugs, because when you use drugs, people get hurt.

Respondent's Exhibit 103, pp. 161 & 177-78.

Accordingly, the record makes clear that the Board revoked petitioner's parole as a result of his having quickly relapsed into drug use. To be sure, the Board was concerned that petitioner would engage in assaultive, criminal behavior. However, the record supports only the conclusion that such concern was based on petitioner's propensity to commit such violent criminal acts while under the influence of drugs, and not on mistaken belief that he had already engaged in such behavior. In addition, the applicable Oregon Administrative Rules set forth four aggravating factors under which the Board had discretion to deny a parole violator re-release on parole. Here, the Board found petitioner met **all four**

12 - FINDINGS AND RECOMMENDATION

aggravating factors. Respondent's Reply to Petitioner's Memorandum in Support of Petition (#43), p. 2.

For these reasons, upon independent review of the record, it is clear that the state court decision denying petitioner relief on his due process claim was not unreasonable under clearly established federal law.

## RECOMMENDATION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#1) should be DENIED, and judgment should enter DISMISSING this case with prejudice.

## SCHEDULING ORDER

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issue, and will constitute a waiver of

a party's right to appellate review of the findings of fact in order of judgment entered pursuant to the Magistrate Judge's recommendation.

    DATED this   9th   day of August, 2007.

                                /s/ Paul Papak
                              Paul Papak
                              United States Magistrate Judge